IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**WESPAK DISTRIBUTORS, INC.,** an
Oregon corporation,

               Plaintiff,

    vs.

**RED HAWK FARMING & COOLING LLC,**
a foreign limited liability company; **JACK LEWIS
DIXON**, an individual; **LEWIS DIXON, JR.,** an
individual; and **JESSIE DIXON**, an individual,

              Defendants.

Civil Case No. 09-743-KI


OPINION AND ORDER


Renee R. Stineman
Dunn Carney Allen Higgins & Tongue LLP
851 SW Sixth Avenue, Suite 1500
Portland, Oregon  97204

       Attorney for Plaintiff


Page 1 - OPINION AND ORDER

KING, Judge:

Plaintiff Wespak Distributors, Inc. ("Wespak") filed this lawsuit under the Perishable Agricultural Commodities Act of 1930 ("PACA"), 7 U.S.C. § 499a *et seq*. The suit seeks to recover payment for agricultural commodities that Wespak delivered to defendant Red Hawk Farming and Cooling, LLC ("Red Hawk") and its member/manager, defendant Jack Dixon, neither of whom have appeared to defend this action.

On December 3, 2009, I ruled from the bench that Wespak is entitled to a default judgment against Red Hawk, but deferred ruling on whether Wespak is entitled to a default judgment against Dixon. I now hold that under PACA, Wespak is entitled to a default judgment against Dixon as well.

## ALLEGED FACTS

Wespak is an Oregon corporation. Red Hawk is an Arizona limited liability company. Defendant Jack Dixon is a member and co-manager of Red Hawk. Wespak entered into a number of contracts to sell Red Hawk perishable agricultural commodities, namely, watermelons. Between August 22, 2007 and September 12, 2008, Red Hawk ordered and received agricultural commodities from Wespak. Wespak invoiced Red Hawk for the commodities but, despite repeated demand for payment, Red Hawk did not pay. The unpaid amounts due and owing Wespak total $612,187.78, plus interest and fees. The amount owed is lessened by $469,034.63, the total that Wespak garnished from Red Hawk's accounts receivable. Nevertheless, a sizeable deficiency of at least $143,153.15 remains.

According to Wespak, Dixon is responsible for the day-to-day operations of Red Hawk. Dixon is the official registered agent of Red Hawk and is its co-manager. He is also a member of

Page 2 - OPINION AND ORDER

Red Hawk and owns at least ten percent of the limited liability company; the other two owners are two members of Dixon's family.  Dixon has signature authority for checks issued on behalf of Red Hawk.  When Wespak's accountant called Red Hawk to demand payment on several occasions, the accountant was always referred to Dixon.  The accountant believes Dixon is Red Hawk's decision-maker about whether to pay Wespak.  According to the accountant, "[d]uring multiple telephone conversations between Dixon and [him]self, Dixon repeatedly admitted that Red Hawk did not have the funds available to pay [Wespak]."  Decl. Gary Wood at ¶ 6.

## STANDARD

After entering an order of default, a district court has discretion to issue a default judgment.  See Fed. R. Civ. P. 55; DIRECTV, Inc. v. Hoa Huynh, 503 F.3d 847, 852 (9th Cir. 2007), cert. denied, 129 S. Ct. 40 (2008).  In exercising its discretion, the court may consider:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986) (citation omitted).

The court has "considerable leeway as to what it may require as a prerequisite to the entry of a default judgment."  Televideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917 (9th Cir. 1987) (per curiam) (footnote omitted).  The court may take the complaint's well-pleaded factual allegations as true, other than the amount of damages.  Id. at 917-18 (citation omitted); DIRECTV, 503 F.3d at 854 (citations omitted).  On the other hand, a "'defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law.'"  Id. (quoting Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975)).

## DISCUSSION

Congress enacted PACA in 1930 to prevent unfair business practices and promote financial responsibility in the fresh fruit and produce industry. Boulder Fruit Exp. & Heger Organic Farm Sales v. Transp. Factoring, Inc., 251 F.3d 1268, 1270 (9th Cir. 2001). In 1984, Congress amended PACA to ensure that growers of agricultural commodities have priority over lenders in all financing arrangements. Id. PACA creates a trust for this purpose:

> Perishable agricultural commodities received by a commission merchant, dealer, or broker in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products, *shall be held* by such commission merchant, dealer, or broker *in trust* for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers, or agents.

Id. (quoting 7 U.S.C. § 499e(c)(2)) (emphasis added). The PACA trust comes into existence upon delivery of the commodities, and applies to all of the purchaser's produce-related inventory and proceeds. See In re Southland Keystone, 132 B.R. 632, 638-39 (B.A.P. 9th Cir. 1991). The trust remains in effect until full payment of sums due has been received. Sunkist Growers, Inc. v. Fisher, 104 F.3d 280, 281 (9th Cir. 1997).

The party holding trust assets must maintain them so they are freely available to satisfy outstanding obligations to the sellers of perishable agricultural commodities. Id. Under Ninth Circuit precedent, this party–the PACA trustee–owes a fiduciary duty to the beneficiary fruit and vegetable suppliers. Id. at 283. If the PACA trustee fails to create and protect a trust for the beneficiary, the PACA trustee commits a breach of trust and shall be liable to the beneficiary suppliers. See 7 U.S.C. § 499e(a). The Ninth Circuit has held that the PACA trust provisions

Page 4 - OPINION AND ORDER

impose these duties, and the resulting liability, on both the purchaser *and* its controlling person who use the assets for a purpose other than payment of suppliers.  Sunkist Growers, Inc., 104 F.3d at 283.

There is, however, some confusion amongst courts, and indeed, the litigants in this case, about the proper test to apply when determining if an individual person can be personally liable for the PACA buyer's failure to pay a supplier.

Wespak argues that PACA's definition of a "responsibly connected person" sets out the proper test to determine who can be personally liable for the purchaser's failure to create and protect a trust for the PACA supplier.   PACA defines "responsibly connected person" as,

> affiliated or connected with a commission merchant, dealer, or broker as (A) partner in a partnership, or (B) officer, director, or holder of more than 10 per centum of the outstanding stock of a corporation or association. A person shall not be deemed to be responsibly connected if the person demonstrates by a preponderance of the evidence that the person was not actively involved in the activities resulting in a violation of this chapter and that the person either was only nominally a partner, officer, director, or shareholder of a violating licensee or entity subject to license or was not an owner of a violating licensee or entity subject to license which was the alter ego of its owners.

7 U.S.C. § 499a(b)(9).  According to Wespak, since Dixon is a member of the LLC, and owns at least ten percent of Red Hawk, he fits the definition of "responsibly connected person," and is, therefore, personally liable under PACA.

According to the statute, however, the significance of being "responsibly connected" to a company that has violated PACA has nothing to do with personal liability for corporate debts. Indeed, "[n]owhere in the legislative history is the issue of individual liability of persons under PACA discussed."  Farm-Wey Produce, Inc. v. Wayne L. Bowman Co., Inc., 973 F.Supp. 778, 783 (E.D. Tenn. 1997).  Rather, a person "responsibly connected" to a PACA violator may not be

employed by a PACA licensee except by approval of the Secretary of Agriculture. 7 U.S.C. § 499h(b); see also Farley and Calfee, Inc. v. U.S. Dept. of Agric., 941 F.2d 964, 968 (9th Cir. 1991) (discussing the "strict employment bar imposed on individuals responsibly connected with violators of the PACA"). There is no other mention in the statute about being "responsibly connected." Recovery, therefore, may not be had of Dixon merely because he is "responsibly connected" to Red Hawk.

The Ninth Circuit, however, imposes personal liability on a PACA violator's "controlling person" who uses trust assets for a purpose other than payment of suppliers. Sunkist Growers, Inc., 104 F.3d at 283. A controlling person is a person who is in the position to control the trust assets. See id. A controlling person who does not preserve trust assets for the trust beneficiaries has breached a fiduciary duty, and is personally liable for that tortious act. Id. A court considering the liability of an alleged controlling person may look at the closely-held nature of the corporation, the person's active management role, and any evidence of the person acting for the corporation. Id. If a court determines that someone qualifies as a controlling person, PACA liability attaches first to the licensed seller of perishable agricultural commodities. Id. If the seller's assets are insufficient to satisfy the liability, the controlling person may be found secondarily liable if he had some role in causing the corporate trustee to commit the breach of trust. Id.

Dixon qualifies as a controlling person. Red Hawk is owned exclusively by three members of the Dixon family and is, therefore, akin to a closely-held corporation. Dixon was the signatory for company checks, and was responsible for deciding whether to pay Wespak. He co-managed Red Hawk and its daily operations, and was the company's registered agent.

Page 6 - OPINION AND ORDER

Although Dixon's absence from this case makes it difficult to know for certain whether he used trust assets for a purpose other than payment of suppliers, the available facts make it sufficiently probable that he did.  Dixon repeatedly told Wespak's accountant that "Red Hawk did not have the funds available to pay [Wespak]."  Wood Decl. at ¶ 6.  Dixon gave no reason why the funds were unavailable.  Dixon's lack of explanation and his choice not to appear to defend this suit are not indicative of a valid explanation for the dissipation of trust assets.  On the contrary, I am convinced that Dixon used the trust assets for a purpose other than payment of Wespak.  The merits of Wespak's substantive claim, therefore, warrant a deficiency judgment against Mr. Dixon.  He will be personally, although secondarily, liable to Wespak.

Whether an LLC member is personally liable as a controlling person is not a novel issue in the District of Oregon.  In F.C. Bloxom Co. v. Rojo Produce Imp. and Exp., LLC, a produce seller delivered an order of fruits and vegetables to Rojo Produce.  No. CV 04-1687, 2006 WL 2021697 at *1 (D. Or. Jul. 16, 2006).  Rojo Produce failed to pay the seller.  Id.  Following an administrative procedure, Rojo Produce partially paid its debt to the seller, but a deficiency remained.  Id.  The seller subsequently brought suit against Garcia Rojo, the founder and owner of Rojo Produce.  Id.  Garcia Rojo had authority and control over the company's assets, and check signing authority.  Id.  He was also responsible for the LLC's day-to-day operations.  Id. at *3.  Judge Aiken found that he had control over the company's assets, "as demonstrated by his ability to authorize wire transfers and to sign checks for the company."  Id.  Judge Aiken held that Garcia Rojo "had a direct fiduciary obligation to preserve and maintain assets subject to the PACA trust and to ensure that those assets were sufficient and freely available for the payment of trust beneficiaries."  Id.  She held Garcia Rojo personally liable for the outstanding debt.  Id.

Page 7 - OPINION AND ORDER

Accordingly, I will issue a default judgment against Dixon.

## CONCLUSION

Wespak's Motion for Default Judgment and Money Award Against Defendant Jack

Dixon (#65) is granted.

IT IS SO ORDERED.

Dated this _____5th_____ day of January, 2010.

　__/s/ Garr M. King_____
Garr M. King
United States District Judge

Page 8 - OPINION AND ORDER